USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN CAMPBELL, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

-against-

ZEROCATER, INC.,

       Defendant.

23-CV-05742 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

  Plaintiff Kevin Campbell initiated this putative class action seeking to recover liquidated damages in the amount of allegedly untimely wage payments by his employer, Defendant Zerocater, Inc. ("Zerocater"). Campbell specifically alleges that Zerocater improperly paid him and others similarly situated on a bi-weekly schedule instead of weekly, without express authorization from the New York State Department of Labor Commissioner in violation of New York Labor Law ("NYLL") Article 6, § 191. Before the Court is Zerocater's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 29, and Campbell's motion to vacate the Court's prior order compelling arbitration and for sanctions, Dkt. No. 26. For the reasons stated herein, Zerocater's motion to dismiss is GRANTED and Campbell's motion to vacate the Court's prior order and for sanctions is DENIED.

**FACTS & PROCEDURAL HISTORY**

  Defendant Zerocater is a Delaware corporation that owns and operates a corporate catering business. *See* Dkt. No. 1 ("Complaint" or "Compl.") ¶ 10. From approximately July 2018 through February 2021, Campbell worked as an "onsite specialist" for Zerocater in New York City, which involved "manual labor," such as setting up and cleaning up after catering

1

events. *See id.* ¶ 12. During his employment, Campbell was paid bi-weekly. Compl. ¶ 13. Zerocater later transitioned to a weekly payment schedule after Campbell's employment ended. Dkt. No. 31 ("Gonzalez Decl.") ¶ 2.

On July 5, 2023, Campbell filed the Complaint, individually and on behalf of all others similarly situated, alleging that he and the putative class members were "manual workers" entitled to weekly pay under NYLL § 191. Compl. ¶ 23. Campbell seeks, *inter alia*, liquidated damages of one hundred percent of the alleged untimely wages, reasonable attorney's fees and costs, and pre-judgment and post-judgment interest in accordance with NYLL § 198. Compl. ¶ 23. Zerocater does not dispute that Campbell was a "manual worker" within the meaning of NYLL § 191.

Campbell alleges that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides for original federal jurisdiction in any class action in which (i) at least 100 members are in the proposed class, (ii) any member of the class is a citizen of a state different from any defendant, and (iii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. Compl. ¶ 8. Campbell's proposed Class is defined as "all persons employed by [Zerocater] in the State of New York over the last six years who (1) earned nine hundred dollars a week or less; and/or (2) did not . . . have the authority to hire and fire other employees[,]" which includes onsite specialists like Campbell. *Id.* ¶ 14. With respect to the amount in controversy, Campbell alleges "the total claims of individual members of the proposed Class . . . are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs. *Id.* ¶ 8

On August 30, 2023, by way of a pre-motion letter, Zerocater challenged the Complaint for lack of subject matter jurisdiction, specifically that Campbell failed to sufficiently allege, and

cannot prove to a reasonable probability, that the amount in controversy exceeds $5,000,000. *See* Dkt. No. 9. Zerocater also indicated it would move to compel arbitration in the alternative. *Id.* As a condition of Campbell's employment with Zerocater, Campbell signed an employment agreement which requires him to arbitrate disputes arising out of his employment or termination thereof, including breaches of the agreement. *See* Dkt. No. 26-1 (Ex. A to Campbell's motion to vacate the Court's prior order and for sanctions) (the "Arbitration Agreement").

On September 20, 2023, Judge Koeltl, the District Judge then-presiding over this action, ordered the parties to discuss the issue of arbitration, and directed Zerocater to provide Campbell with its calculations regarding the amount in controversy. *See* Dkt. No. 12. On November 3, 2023, the parties jointly requested that Judge Koeltl compel them to arbitration and stay this action pending arbitration, *see* Dkt. No. 16, which Judge Koeltl granted. *See* Dkt. No. 17 (the "Arbitration Order").

This action was reassigned to the undersigned on February 16, 2024. *See* Dkt. No. 18. On March 12, 2024, the parties filed a joint status letter regarding the status of arbitration. The letter also previewed the disputes that are the subject of the present motions. *See* Dkt. No. 22. On April 17, 2024, the parties filed another joint status letter informing the Court that arbitration was no longer proceeding, Campbell was preparing his motion to vacate and for sanctions, and Zerocater was maintaining its position that the Court does not have subject matter jurisdiction and was prepared to move to dismiss on that basis. *See* Dkt. No. 24.

Campbell filed his motion to vacate the Arbitration Order and for sanctions on May 5, 2024. *See* Dkt. No. 26 (the "Motion to Vacate and for Sanctions").[1]

---

[1] The Court shall refer to the parties' briefing on the Motion to Vacate and for Sanctions as follows: Dkt. No. 26 ("Campbell Mot."), Dkt. No. 27 ("Zerocater Opp."), Dkt. No. 33 ("Campbell Reply"). Campbell's moving brief does not have pagination, so pincites to the brief refer to the ECF pagination.

Zerocater filed its motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on June 6, 2024. *See* Dkt. No. 29 (the "Motion to Dismiss").[2] On August 28, 2024, Zerocater filed a notice of supplemental authority in support of the Motion to Dismiss. *See* Dkt. No. 37.

## DISCUSSION

### I.  MOTION TO DISMISS

Zerocater argues that the Complaint must be dismissed for two reasons. *First*, Zerocater argues that the Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Campbell has not sufficiently alleged, and indeed cannot establish, that the amount-in-controversy exceeds $5,000,000, as required by CAFA. *See* Zerocater Mot. at 5–9. *Second*, Zerocater argues that the Complaint should be dismissed under Rule 12(b)(6) because there is no private right of action under NYLL § 191 for the frequency of payment violations alleged by Campbell. *See id.* at 9–22. The Court finds that the Complaint must be dismissed under Rule 12(b)(1) because Campbell cannot, as a matter of law, establish that the amount-in-controversy exceeds $5,000,000, and therefore, the Court does not have subject matter jurisdiction and there is no need to reach Zerocater's Rule 12(b)(6) challenge.[3]

---

Although the Court has not formally lifted the stay of this action, given the conclusion of arbitration and the motion practice before the Court, Campbell's request to lift the stay imposed by the Arbitration Order is moot for purposes of this Opinion. The Court shall only address Campbell's requests to (i) vacate the portion of the Arbitration Order compelling the parties to arbitrate and (ii) award sanctions.

[2] The Court shall refer to the parties' briefing on the Motion to Dismiss as follows: Dkt. No. 32 ("Zerocater Mot."), Dkt. No. 34 ("Campbell Opp."), Dkt. No. 35 ("Zerocater Reply").

[3] If the Court were to reach the issue of whether a private action exists under NYLL § 191, it would decline to dismiss on that basis, because "[t]he clear weight of authority among district courts in the Second Circuit is aligned with the conclusion in *Vega* [*v. CM & Associates Construction Management, LLC*] that there is an implied private right of action to enforce [NYLL §] 191." *See Charles v. United States of Aritzia Inc.*, No. 23-cv-09389 (MMG), 2024 WL 4167502, at *6 (S.D.N.Y. Sept. 12, 2024).

4

### A. Legal Standard

"[S]ubject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998) (quoting *Curley v. Bignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990)). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, an action must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that such jurisdiction exists. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (noting "reasonable probability" standard).

Where, as here, the defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). A plaintiff must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (alteration in original) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)). "[T]he district court can refer to evidence outside the pleadings when resolving a [12(b)(1)] motion to dismiss." *Broidy*, 944 F.3d at 441 (internal references omitted); *Jackson v. Madison Sec. Grp., Inc.*, No. 21-cv-08721 (JGK), 2022 WL 4538290, at *2 (S.D.N.Y. Sept. 28,

2022) ("Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.")

### B. Campbell Cannot Plausibly Allege That the Amount in Controversy Exceeds $5,000,000

Campbell asserts subject matter jurisdiction under CAFA, which requires that (i) at least one plaintiff and one defendant are citizens of different states; (ii) the putative class contains at least 100 members; and (iii) the amount in controversy exceeds $5,000,000 in the aggregate, not including interest or costs. 28 U.S.C. § 1332(d). Campbell and the putative class are, *inter alia*, all Zerocater employees in New York, who are "manual workers" within the meaning of NYLL § 191, and were employed at any point between July 5, 2017[4] to July 5, 2023, the date the Complaint was filed. *See* Compl. ¶ 14 (defining the putative class as "all persons employed by Defendant in the State of New York over the last six years who (1) earned nine hundred dollars a week or less; and/or (2) did not . . . have the authority to hire and fire other employees. . . include[ing] onsite specialists such as the Plaintiff. . . [who] were required to spend more than 25% of their time engaged in physical labor."). Campbell seeks, on behalf of himself and all others similarly situated, the amount of their untimely paid wages as liquidated damages, reasonable attorney's fees and costs, and pre- and post-judgment interest, pursuant to NYLL § 198. *Id.* ¶ 23.

Based on the face of the Complaint and on the evidence in the record proffered by Zerocater, the Court finds that Campbell has not plausibly alleged that the aggregate amount in

---

[4] As noted, the Complaint does not specify a date for the start of the class period, but rather states the more general "over the last six years" period, which the Court assumes is intended to mean six years from the date of the Complaint's filing.

controversy exceeds $5,000,000, and, given the discovery already ordered by Judge Koeltl, there appears no reasonable possibility that he could ever so allege.

"[O]n a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 573 (S.D.N.Y. 2021) (quoting *Stengel v. Black*, No. 03-cv-00495 (GEL), 2004 WL 1933612, at *1 (S.D.N.Y. Aug. 30, 2004)).  Where, as here, the aggregate amount in controversy is not obvious from the face of the complaint, the party invoking jurisdiction under CAFA must show is that there is a "reasonable probability" that the amount in controversy meets the threshold of $5,000,000.  *Blockbuster*, 472 F.3d at 58.  Here, too, "[w]here the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record." *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994); *see, e.g.*, *Cosgrove*, 520 F. Supp. 3d at 574.

Conversely, "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 354 (S.D.N.Y. 2019).  "[T]he legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.  If the right of recovery is uncertain, the doubt should be resolved in favor of the subjective good faith of the plaintiff." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996).

The Complaint fails to sufficiently allege the aggregate amount in controversy.  Indeed, the Complaint is devoid of <u>any</u> factual allegations that support the conclusory assertion that the aggregate amount in controversy exceeds $5,000,000.  *See* Compl. ¶ 8.  The only reference to the

amount in controversy in the Complaint is as follows: "Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs." *Id.*  Courts have treated similarly conclusory allegations as insufficient to satisfy the CAFA amount in controversy requirement.  *See, e.g.*, *Doeman Music Grp. Media & Photography LLC v. DistroKid, LLC*, No. 23-cv-04776 (MMG), 2024 WL 4349480, at *8 (S.D.N.Y. Sept. 30, 2024) ("Nor has Plaintiff alleged *any* facts whatsoever or provided any other evidence from which the Court may find that the amount in controversy requirement is, or could be, met." (emphasis in original)); *Venning v. Primark US Corp.*, 23-cv-10176 (JMF), 2023 WL 8188432, at *1 (S.D.N.Y. Nov. 27, 2023) (*sua sponte* raising the failure to sufficiently allege the amount in controversy requirement in a NYLL § 191 action involving a frequency of payment claim); *cf. Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 326–27 (S.D.N.Y. 2022) (holding the complaint sufficiently alleged damages where there were factual allegations regarding the number of overtime hours worked and the employee's hourly pay rate).

Typically, the "reasonable probability" burden to allege the requisite amount in controversy is minimal because "a rebuttable presumption [exists] that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  However, this presumption "is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy," which the Complaint does not.  *See Bardsley v. Nonni's Foods LLC*, No. 20-cv-02979 (NSR) 2023 WL

3570550, at *4 (S.D.N.Y. May 18, 2023) (quoting *Wood v. Maguire Auto. LLC*, No. 09-cv-00640 (GTS/GHL), 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011)).

The Complaint not only fails to sufficiently allege facts plausibly supporting the requisite aggregate amount in controversy, but the Court also finds that, as a matter of law, the amount in controversy falls millions short of the CAFA threshold. Before the Court is a redacted excerpt of Zerocater's Payroll Register Summary ("2024 Payroll Register Summary") from November 19, 2016[5] through April 8, 2023 (the "Biweekly Pay Period"), for onsite specialists who worked in New York, *see* Gonzalez Decl. ¶ 2 & Ex. A; and an excerpt of labor distribution reports (the "Labor Distribution Reports") for Campbell and ten other Zerocater employees who, because of their internal moves during or subsequent to the Biweekly Pay Period, were excluded from the 2024 Payroll Register Summary, *see* Gonzalez Decl. ¶ 3 & Ex. B.

Based on these records, Zerocater represents that the total compensation, including wages and other fringe benefits (*e.g.*, paid sick leave), paid to the 157 onsite specialists during the Biweekly Pay Period was $1,881,927.36, comprised of $1,596,725.50 total compensation captured in the 2024 Payroll Register Summary and $285,201.86 total compensation captured in the Labor Distribution Reports for the other eleven individuals, including Campbell. Gonzalez Decl. ¶ 4. Zerocater argues that the liquidated damages sought by Campbell on behalf of himself and the putative class would be roughly equal to half of the total compensation paid over the Biweekly Pay Period, which would be $940,963.68.[6] *See* Zerocater Mot. at 8. Zerocater further

---

[5] The Court notes that the amounts in these documents would be <u>higher</u> than the amount in controversy in the case because Zerocater has produced records for several months prior to the start of the class period as asserted in the Complaint. *See* Compl. ¶ 14.

[6] The damages represent "late-paid" wages, so when an employee is paid bi-weekly but should be paid weekly, one half of their wages are being paid on time and the other half (representing the first week of the pay period) are being paid late. *See also* Compl. ¶ 13.

9

argues that, "even factoring reasonable attorneys' fees equaling approximately one-third of potential damages, . . . Plaintiff falls millions of dollars short." *Id.* (internal footnote and emphasis omitted). Indeed, based on Zerocater's records, the total amount in controversy would be $1,254,618.24, comprising of $940,963.68 in liquidated damages and $313,654.56 in attorney's fees.

Campbell argues that the Court should not take Zerocater's "highly redacted payroll records at face value," given Zerocater's past productions of records that have purportedly reflected inconsistent amounts in controversy. Campbell Opp. at 4–5. In support of its motion to dismiss, Zerocater also included a copy of a Payroll Register Summary for Zerocater's New York employees, which was provided to Campbell on October 31, 2023 ("2023 Payroll Register Summary"), pursuant to the Court's September 20, 2023 Order. *See* Kaufman Decl. ¶ 5 & Ex. C. The 2023 Payroll Register Summary indicates that the total compensation paid was $1,462,147.91—approximately $100,000 less than the compensation indicated in the 2024 Payroll Register Summary, and approximately $400,000 less than the combined total compensation based on the 2024 Payroll Register Summary and Labor Distribution Reports.

This relatively minor discrepancy obviously does not take the aggregate amount over the $5,000,000 threshold, and the discrepancy is easily resolved—the 2023 Payroll Register Summary indicates that it is for payroll checks issued from July 14, 2017 to April 14, 2023, *see* Kaufman Decl. Ex. C, and while the 2024 Payroll Register Summary covers payroll checks issued from December 2, 2016 through April 14, 2023, which is a longer time period. *See* Gonzalez Decl. Ex. A.[7] As Zerocater explains in its reply, the 2024 Payroll Register Summary

---

[7] April 8, 2023 was the last day of Zerocater's bi-weekly pay period cycle before the company changed to a weekly pay period; thus, the April 14, 2023 checks were the last checks issued for bi-weekly pay periods. Gonzalez Decl. ¶ 2.

10

and labor distribution reports "accounted for the entire potential statutory period, including the tolling period of 228 days resulting from the Governor's COVID-era executive order." Zerocater Reply at 7 (internal footnote and emphasis omitted). And, contrary to Campbell's characterization that Zerocater's position "seems to change based on [its] whim that day," Campbell Opp. at 4, Zerocater has consistently indicated that the deficiency of the aggregate amount in controversy is in the multi-millions and provided objective documentation to support its claims. *See, e.g.*, Dkt. No. 9 at 2 ("Defendant's payroll records prove that it paid its employees in the purported class—about 150 in total—less than $1.5 million over the six-year claim period." (internal footnote omitted)); *see also* Zerocater Reply at 6–7; Gonzalez Decl. ¶ 1 (identifying himself as the Controller of Zerocater, who reviewed the books and records created in the ordinary course of business regarding payroll). The clearly explicable discrepancy between the 2023 Payroll Register Summary and 2024 Payroll Register Summary is also *in Campbell's favor*, as Zerocater points out, because the total compensation indicated in the 2024 Payroll Register Summary is *greater* than the total compensation indicated in the 2023 Payroll Register Summary. *See* Zerocater Reply at 8.

      Campbell's speculative contention regarding the redacted nature of Zerocater's records is similarly meritless and does not undermine the Court's finding that Campbell cannot, as a matter of law, allege the requisite amount in controversy. Zerocater represents that the redactions cover "granular information such as pay rates, hours worked, payroll codes, and breakdowns of benefits, such as sick leave, retirement contributions, taxes, and other benefits, and other information irrelevant to the calculation of the amount in controversy," Zerocater Reply at 5, and this claim is supported by the sworn declaration of Amanda M. Blair, counsel for Zerocater who prepared the redactions. *See* Blair Decl. ¶¶ 2–3 ("These redactions were made to protect the

11

privacy and confidentiality of the individuals whose information is encompassed within the reports and redact information irrelevant to the calculation of the amount in controversy.").[8] Campbell has not provided any colorable basis for or evidence that otherwise compels the Court to second-guess Zerocater's representations or to conclude that there is any reasonable possibility Campbell could plead facts that would establish an amount in controversy of $5,000,000 or more.

Campbell also requests leave to take jurisdictional discovery on the amount in controversy, *see* Campbell Opp. at 4–5, but the Court does not find (and Campbell does not provide) any basis to grant such discovery, especially given the evidence proffered by Zerocater demonstrating—to a legal certainty—that Campbell and the putative class fail to meet the amount-in-controversy threshold by millions. *See* Gonzalez Decl. Exs. A & B; *see, e.g.*, *Doeman Music Grp. Media & Photography LLC*, 2024 WL 4349480, at *6 (denying leave for jurisdictional discovery where such discovery would not aid the determination of the amount in controversy). Campbell has not made "an arguable showing of jurisdiction or identified a genuine issue of jurisdictional facts to warrant jurisdictional discovery." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 611 (S.D.N.Y. 2012); *see, e.g.*, *Wallert v. Atlan*, 141 F. Supp. 3d 258, 287 (S.D.N.Y. 2015) (finding no showing of jurisdiction or genuine dispute over jurisdictional facts that would warrant jurisdictional discovery). Indeed, as Zerocater points out in its reply, Campbell has not identified any further information that Zerocater has not already submitted to the Court that would change the Court's conclusion. *See* Zerocater Reply at 9; *see also Arch*

---

[8] Based on Zerocater's sworn representations, it also appears that the redacted information would be potentially personal identifying information related to employment history, such as employee IDs, which is a category of information requiring "caution" that parties may redact from their public filings without prior approval of the Court. *See* United States District Court for the Southern District of New York, *Electronic Case Filing Rules & Instructions*, Rule 21 (July 24, 2023 ed.), https://www.nysd. uscourts.gov/sites/default/files/pdf/ecf_rules/ECF%20Rules%2020230724%20TH%20FINAL.pdf.

*Trading Corp. v. Republic of Ecuador*, 839 F.3d 139, 207 (2d Cir. 2016) (affirming denial of jurisdictional discovery where plaintiffs did not specify what discovery they might seek).

Further, the cases that Campbell cites to in support of its request are inapposite or otherwise distinguishable, given that the Complaint does not allege *any* specific facts supporting its conclusory invocation of the requisite amount in controversy, and in light of Zerocater's payroll records, supported by sworn declarations by persons with personal knowledge. In all of the cases relied on by Campbell, there are passing references to jurisdictional discovery, but the opinions do not include the court's reasoning behind the grant of such leave. In *Acevado v. Citibank, N.A.*, Judge Gardephe permitted jurisdictional discovery where it was not clear from the second amended complaint whether the $5,000,000 threshold set forth in CAFA was met. *See* No. 10-cv-08030 (PGG), 2019 WL 1437575, at *5 (S.D.N.Y. Mar. 31, 2019). In *Ebin v. Kangadis Food Inc.*, the plaintiffs acknowledged that their assertion of the aggregate amount in controversy was an "educated guess," but that guess was based on the defendant's submission in a different action. No. 13-cv-02311 (JSR), 2013 WL 3936193, at *2 (S.D.N.Y. July 26, 2013). And finally, in *Preira v. Bancorp Bank*, Judge Seibel referenced granting leave to engage in jurisdictional discovery in ultimately granting the defendants' motion to dismiss. 885 F. Supp. 2d 672 (S.D.N.Y. 2012).

Accordingly, based on the foregoing, the Court must dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and denies Campbell leave to take jurisdictional discovery.[9] Because the Court finds that it lacks subject matter jurisdiction over this action, the

---

[9] Tellingly, Campbell does not seek leave to amend the Complaint. Under Rule 15(a)(2), leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). The Court would not grant leave for Campbell to amend the Complaint, even if such a request had been made, given that any potential amendment of the Complaint would be

13

Court does not reach the parties' arguments regarding Zerocater's 12(b)(6) challenge to the Complaint.

## II.    MOTION TO VACATE AND FOR SANCTIONS

Campbell argues that the Court should (i) vacate its prior Order compelling the parties to arbitration because Zerocater knowingly waived its right to compel arbitration and (ii) award sanctions because Zerocater purportedly employed a bait-and-switch regarding whether it would enforce the cost-sharing provisions of the Arbitration Agreement.  Because the Court lacks subject matter jurisdiction over this case, the Court does not reach the parties' arguments regarding whether the Court's prior Order should be vacated.  The Court does have authority under 28 U.S.C. § 1927 and inherent authority to police the conduct of lawyers and parties appearing before it—however, because the Court finds that Zerocater and its counsel's purported conduct is not sanctionable, the motion for sanctions is denied.

### A.  Legal Standard

Under 28 U.S.C. § 1927, the Court may impose sanctions of attorney's fees and costs against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  Actions are sanctionable under § 1927 only if they are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute.").

---

futile with respect to the amount in controversy.  *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2007) (holding leave to amend may be properly denied, *inter alia*, in cases of futility of amendment).

Similarly, the Court has the inherent power to impose sanctions against a party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." (internal quotation marks and citations omitted)). "The only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Olivieri*, 803 F.2d at 1273. "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (quoting *Chambers*, 501 U.S. at 44); *see Goodyear Tire & Rubber Co.*, 581 U.S. at 108 n.5 (noting that court's "inherent authority . . . should be exercised with especial 'restraint and discretion'" (citation omitted)). Accordingly, an award of attorneys' fees under the Court's inherent power requires "a clear demonstration of bad faith in order to justify sanctions." *Int'l Bhd. of Teamsters*, 948 F.2d at 1347. "That bad faith must be shown by (1) 'clear evidence' o[f] (2) 'harassment or delay or . . . other improper purposes.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (omission in original) (quoting *Int'l Bhd. of Teamsters*, 948 F.2d at 1345).

### B. Zerocater and its Counsel's Conduct is Not Sanctionable

Campbell claims that Zerocater and its counsel's sanctionable conduct was "kick[ing] these claims out of federal court" to arbitration and "specifically represent[ing] that [Campbell

and the putative class] would not each be expected to pay anything more than the $400 allowed under the JAMS rules," *i.e.*, waiving the cost-sharing provision of the Arbitration Agreement. Campbell Mot. at 12–13.  Campbell further argues that Zerocater's later demand that Campbell and the putative class cover the arbitration costs makes clear that Zerocater's efforts to compel arbitration were undertaken in bad faith, have delayed the resolution of the action by a year, and wasted "thousands of dollars in filing fees." *Id.* at 13.

The plain language of the Arbitration Agreement, which Campbell signed as a condition of his employment, provides:

> I agree that any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ('JAMS'), pursuant to its employment arbitration rules & procedures (the 'JAMS Rules'), provided, however, that the JAMS Rules shall not contradict or otherwise alter the terms of this Agreement, including, but not limited to, the below cost sharing provision . . . .  I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration . . . .

Arbitration Agreement § 12(B) (text case altered).  Even assuming *arguendo* that Campbell's stipulation to compel arbitration was induced by assurances from Zerocater that it would not enforce this cost-sharing provision, Campbell has not clearly demonstrated or made a particularized showing that such assurances were made in bad faith or intended to waste Campbell and the putative class's time and resources.  Further, Campbell repeatedly casts Zerocater and its counsel's conduct as "gamesmanship," but Zerocater's correspondence with Campbell, either over e-mail or telephone, are not actions so inconsistent with the right to enforce the cost-sharing provision so as to constitute waiver.  *See, e.g.*, *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023).

Further, to the extent Campbell's argument is premised on the purported unenforceability of the cost-sharing provision of the Arbitration Agreement, as Zerocater argues in its opposition, *see* Zerocater Opp. at 14–15, courts have consistently held that such cost-sharing provisions are

16

not *per se* unconscionable "where plaintiffs have not affirmatively demonstrated that the cost-sharing provisions would preclude them from pursuing their rights in the arbitral forum." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 57 (E.D.N.Y. 2017); *see also Brady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459, 467 (2010) (explaining that plaintiffs carry the burden of demonstrating that splitting the cost of arbitration would prevent them from effectively vindicating their rights); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292–93 (S.D.N.Y. 2002) (finding plaintiffs had not carried their burden). Campbell has not proffered any evidence that he or any member of the putative class would be financially incapable of paying their shares of the arbitration costs, so Zerocater and its counsel's conduct is categorically not sanctionable—indeed, Zerocater and its counsel could not have acted in bad faith when they were enforcing the plain language of the Arbitration Agreement through their efforts to compel arbitration and enforce the cost-sharing provision of the Arbitration Agreement.

Because Zerocater and its counsel did not engage in sanctionable conduct (and certainly not to the level of clearly demonstrable bad faith), the Court shall not award sanctions, either under § 1927 or under its inherent authority, to Campbell.

\* \* \*

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Zerocater's motion to dismiss and DENIES Campbell's motion to vacate the Court's prior order and for sanctions. The Clerk of Court is respectfully directed to CLOSE this case.

Dated: March 31, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge